UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| GxG MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 05-162-B-K |
| YOUNG BROTHERS | ) | |
| AND CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION[1]

The plaintiff, GxG Management, hired the defendant, Young Brothers and Co., to build a vessel, the M/V Captain Kidd IV. GxG Management claims that Young Brothers failed to construct the vessel in a workmanlike manner, thereby breaching the parties' contract and both implied and expressed warranties. In addition, GxG Management claims that Young Brothers is liable in damages for misrepresentation and for unfair or deceptive trade practices. Now pending is Young Brothers's motion for partial summary judgment requesting the dismissal of the misrepresentation claim and the unfair/deceptive trade practices claim. I grant the motion, in part.

### Statement of Facts

Plaintiff GxG Management, LLC (GxG) is a Limited Liability Company organized under the laws of the State of Delaware with a principle place of business at 540 Madison Avenue, New York, New York. (Def.'s Statement of Material Facts ¶¶ 1, 4,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

Docket No. 16.) GxG is a business entity that provides administrative and bookkeeping functions, manages personal investments and manages residences in New York City and Gardiner's Island, New York, for Robert G. Goelet, his wife and two children. (Id. ¶ 2.) GxG holds title to the Captain Kidd IV[2] and manages its operation in service to the Goelet family. The boat almost exclusively travels between the harbor in East Hampton, New York, and Gardiner Island, New York, where the Goelet family residence is located. It is used to ferry the family as well as household supplies. It is also used to ferry GxG employees to the island and, on occasion, contractors and building supplies as well as other service providers such as a vet for the Goelet's horse. (MacKay Dep. at 6-7, 17, Docket No. 23, Elec. Attach. 1.) In the words of Donald MacKay, the captain of the vessel, "the boat is the vessel that gets everything to their doorstep." (Id. at 7.) The vessel is not used for commercial charter services. (Id. at 6.) Captain MacKay pilots the vessel according to a schedule and as otherwise instructed. He is as apt to receive instructions or orders from a member of the Goelet family as from a member of the staff at GxG. (Id. at 15-17.)[3]

On one occasion in which Captain MacKay visited Young Brothers's boatyard during the construction of the M/V Captain Kidd IV, he observed the mounts for the vessel's large Caterpillar engine and questioned Young Brothers's supervisor, Harold Hammond, on the quality and design of the engine mounts. (Pl.'s Statement of Additional Material Facts ¶ 18 (PSAMF), Docket No. 23.) Mr. Hammond represented to Captain MacKay that the engine mounts were sufficient to secure the large Caterpillar

---

[2] Captain Kidd, the Seventeenth Century privateer who was executed for piracy, is reputed to have buried treasure on Gardiner's Island.
[3] Captain MacKay's relevant deposition testimony is cited in support of paragraphs 10 through 16 of GxG's Statement of Additional Material Fact.

2

engine. (Id. ¶ 19.) Captain MacKay contends that he had some concern about it at the time, but that, at the time the representation was made, the boat was far enough along in construction that he did not pursue further discussion on that topic but decided to "go along with the program." (MacKay Dep. at 68.) MacKay asserts that the boat had a vibration when it was delivered that gradually worsened with time. (PSAMF ¶ 20.) According to MacKay, the vessel was inspected at a marina and he observed that the engine was not securely fastened to the mounts and was not capable of being securely fastened because certain bolts were not "drilled on center."[4] (Id. ¶¶ 21-22.) GxG contracted for a marina to install heavier mounts and to make certain additional repairs that it attributes to poor workmanship. (Id. ¶¶ 22-28.) GxG and Young Brothers each have an expert witness who will testify to the inadequacy or adequacy, respectively, of the engine mounts. (Id. ¶¶ 29-32.) A collection of other problems were identified and some repairs were made by an agent of Young Brothers, though there is a genuine issue if those repairs were adequate to address all of the alleged defects in the vessel that were allegedly known to Young Brothers. (Id. ¶ 25.)

## Discussion

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required." Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002). A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[4] Young Brothers counters that Captain MacKay piloted the vessel over some ice between the date of delivery and the inspection at the marina and that the collision bent the vessel's propeller, leading to the engine vibration and certain other alleged problems. (Reply Statement ¶¶ 20-21, 30-32, Docket No. 31.)

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

Young Brothers contends that a business entity like GxG cannot maintain a claim under the Maine Unfair Trade Practices Act[5] because the Act is designed to protect consumers and, from Young Brothers's perspective, business entities like GxG ought not be able to pursue such a claim as a matter of public policy, even if they do exist to manage the personal affairs of a family. Young Brothers also argues that there is insufficient evidence of any reliance by GxG upon any representations concerning the adequacy of the vessel's engine mounts. I see no need to address the former argument because I conclude that the latter argument is dispositive of not only the misrepresentation claim, but also the heart of the UTPA claim. What remains of the UTPA claim can be tried and the policy position taken by Young Brothers that corporations should not be able to take advantage of consumer protection statutes can be

---

[5] 5 M.R.S.A. §§ 205A-214.

taken up again in the event that the factfinder returns a verdict favorable to GxG on this claim.[6]

Both of the claims in question arise out of GxG's allegation that Mr. Hammond made a material misrepresentation to Captain MacKay regarding the adequacy of the engine mounts used to construct the vessel and that, but for the misrepresentation, GxG would have demanded that Young Brothers install more substantial engine mounts in the vessel. A claim for negligent or intentional misrepresentation requires proof of detrimental reliance upon a material false statement of fact. Guiggey v. Bombardier, 615 A.2d 1169, 1173 (Me. 1992). Similarly, a claim for a deceptive trade practice requires proof of a material misrepresentation that misleads the consumer regarding choice or conduct in relation to a product. State v. Weinschenk, 2005 ME 28, ¶ 17, 868 A.2d 200, 206. The evidence relied upon by GxG is the following deposition testimony of Captain MacKay:

> Q. Okay. Specifically how would you go over or how did you go over engine mounting with Mr. Hammond?
>
> A. I stood on the hull of the boat as he was working on the motor mounts and asked him if he thinks these mounts are sufficient. I expressed to him that they looked identical to the mounts that were in our No. 3 boat but yet the engine was half the size of this one and I asked him if he thought they were sufficient mounts, and he said at that time that they were, that's the way he – they build all their boats and there should not be any problem with these mounts. I asked him about rubber mounts and he said that the engine manufacturer would not warranty rubber mounts on that engine.
>
> Q. Okay. Did you – could you have demanded different mounts at the time?

---

[6] GxG observes that the UTPA affords private remedies to "any person who purchases or leases goods, services or property . . . primarily for personal, family or household purposes," 5 M.R.S.A. § 213, and defines "person" to include "corporations . . . and any other legal entity," id. § 206. This is a pretty persuasive point.

5

> A.  *If the boat wasn't as late in construction as it was I could have gone further in that direction*, but as I was guaranteed by Mr. Hammond that these mounts were sufficient I had to go along with the program.

(MacKay Dep. at 68 (emphasis added).)  I conclude that this testimony undercuts any finding of detrimental reliance upon a material misrepresentation because it reflects that the representation was made at a time, well into the construction process, that, in the view of the witness himself, did not cause GxG to be influenced in regard to making any consumer choice respecting the engine mount or from engaging in other material conduct in respect to the vessel.  In terms of the misrepresentation claims, whether sounding in fraud, negligence, or under the UTPA, there simply is no evidence of detrimental reliance.  Accordingly, as a matter of law these representations give rise to warranty issues, not misrepresentation tort claims.  This legal determination calls for the entry of summary judgment against the misrepresentation claims raised in count II.  It also calls for the entry of summary judgment against any claim for a deceptive trade practice because such a claim likewise depends upon proof of reliance upon a material misrepresentation.  However, I do not dismiss count VI in its entirety because the Law Court has held that a breach of warranty can support, under certain circumstances, a claim for an unfair trade practice (as opposed to a deceptive trade practice).  Weinschenk, 2005 ME 28, ¶¶ 15-17, 868 A.2d at 206.  "To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition."  Id. ¶ 16 (affirming a finding of unfairness based upon the defendants' design and construction practices).  That aspect of count VI can be determined at trial with the benefit of a more complete record and Young

Brothers's policy argument can be addressed, if necessary, in the context of a motion for judgment pursuant to Rule 50.  The record could support a finding of significant defects in workmanship combined with a failure to take responsibility for repairs, although it by no means compels such a finding.  See, e.g., Searles v. Fleetwood Homes of Pa., Inc., 2005 ME 94, ¶ 34, 878 A.2d 509, 520 ("[R]efusing to take responsibility for repairs is an aggravating factor that can render commercial misconduct unfair.").  Given the potential for findings such as those I feel that it would be better to determine the issue of fairness at the conclusion of trial rather than to foreclose the issue as a matter of law.

## Conclusion

For the reasons stated above, the motion for partial summary judgment is **GRANTED IN PART**.  Count II is **DISMISSED** and Count VI is **DISMISSED IN PART**, to the extent it asserts a deceptive trade practice claim.

*So Ordered.*

Dated October 24, 2006

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge