UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

GxG MANAGEMENT, LLC,            )
                               )
            Plaintiff,         )
                               )
      v.                       )            Civil No. 05-162-B-K
                               )
YOUNG BROTHERS AND CO., INC.,  )
                               )
            Defendant.         )

## ORDER ON MOTION TO AMEND JUDGMENT

This matter is before me on Young Brothers' motion to amend judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure. Young Brothers asks that I amend the findings of fact and conclusions of law entered on February 21, 2007, and the judgment entered upon those findings and conclusions on February 22, 2007. (Docket Nos. 71 & 72.) They point to two areas where they believe my factual and/or legal conclusions were incorrect and erroneous: (1) my finding that GxG Management LLC could maintain this action and recover damages when, in their view, all economic harm was suffered by the separate legal "entity," GxG Management LLC (Series B); and (2) my finding that GxG Management's expert presented the more likely explanation as to why certain bolt holes in the subject vessel's engine bed stringers became elongated and why the vessel's propeller shaft bent as it did. I address the issues in reverse order.

**A.      The Causation Issue**

This is not a case where the question of causation is an easy one or readily apparent to the average person with no knowledge about boats or motors. I listened closely to the evidence and determined that Mr. Pride, the plaintiff's expert, presented the most logical explanation for why

the bolt holes became elongated, the engine dropped and the propeller shaft, inside the boat, closest to the engine, became misaligned.

In competition with this theory was the theory propounded by the Young Brothers' expert, Mr. Cartwright.  According to Mr. Cartwright, the shaft was bent when the vessel's propeller struck ice and, over time, resulting vibrations from the bent propeller and shaft created unusual force that ultimately transferred to the points where the engine was fixed to the boat hull. In Mr. Cartwright's opinion, the elongation of the bolt holes and subsidence of the engine under such circumstances did not reflect a defect in the vessel.  Although this could be a plausible theory, I was more persuaded by Mr. Pride's theory and by the reasons why he rejected Mr. Cartwright's opinion.  In the end, I found Mr. Pride's explanation to be the one that was more likely true than not, and I still hold that view.  Accordingly, the motion to amend my causation finding is denied.

## B.    The Delaware LLC Series Issue

Young Brothers asserts that I committed a legal error when I found that it was not an impediment to GxG Management's maintenance of this suit that it had placed the title of the vessel in GxG Management LLC (Series B), a "series of interest" created under Delaware law as a means of limiting the liability of the LLC with respect to the operation of the vessel.  I am happy for the opportunity to clarify my findings, but I am still of the opinion that my ultimate finding was correct.

In this case GxG Management LLC purchased a custom-built vessel from Young Brothers.  Thereafter, pursuant to Delaware law, 6 Del. Code Ann. § 18-215(a), GxG Management formed a "series" of "limited liability company interest" for the purpose of holding title to and operating the vessel in question.  Subsequently, GxG Management brought suit

against Young Brothers asserting contract and tort law claims based on allegations of poor workmanship and misrepresentation.  Following the entry of partial summary judgment in favor of Young Brothers on a claim of intentional misrepresentation, GxG Management filed a motion to amend its complaint to add GxG Management Series B as a party to the litigation.  That motion was denied and Young Brothers, in its opposition to the motion, took the position, subsequently asserted at trial in a motion for judgment, that GxG Management was not competent to maintain contract and tort claims against Young Brothers because it had transferred the vessel to its Series B interest.  According to Young Brothers, a Delaware LLC and its series are distinct entities, like a corporation and its subsidiary, and the LLC may not pursue legal claims in relation to assets placed in a series.  I concluded that the unique relationship between a Delaware LLC and its series does not create a truly separate legal entity capable of independently pursuing its own legal claims.  For that reason, I referred to the transfer of title in the vessel to Series B as "nominal," meaning that the transfer did not result in a transaction that deprived the LLC of the contract and tort rights that arose from its relationship with Young Brothers, so that the LLC remained the "real party in interest" with breach of contract and express and implied warranty claims against Young Brothers.  In effect, I concluded that Series B is not a legal entity at all but merely a "series of interest" maintained by the LLC, and that by taking advantage of the limited liability offered under Delaware law by transferring the vessel to Series B and operating the vessel through the "vehicle" of Series B, the LLC did not forfeit rights obtained under contract or tort law in relation to the vessel.

In the course of articulating this finding I did lapse on one occasion (near the bottom of page 13 of the Findings of Fact and Conclusions of Law) by referring to Series B as an entity, despite my effort not to.  There I stated:  "Series B is simply the listed legal owner and the entity

whose assets would be responsible for satisfying any obligations that were incurred by the Captain Kidd IV."  I do not find that Series B was an entity at all, but merely a "series of interest" of GxG Management LLC.  Based on this understanding of the Delaware law, it remains my conclusion that GxG Management is the appropriate party to pursue the claims raised in this case, both tort and contract, and that the various paperwork entered into the record in relation to the formation and powers of Series B and the transfer of the vessel to Series B did not deprive GxG Management of its contract and tort claims under Maine or Delaware law, and did not somehow negate the fact that it suffered damages in relation to the workmanship of the vessel.

There remains one final conclusion of law that calls for a minor clarification.  In its motion to amend, Young Brothers maintains that I "recognized" the validity of some aspect of its argument when I found "that GxG . . . has a unity of interest with Series B such that under Maine law Series B could not obtain judgment against the Young Brothers for these same events."  The point I intended to make did not concern GxG Management's competency to sue on behalf of Series B or the legal question of whether GxG Management and its Series B are distinct legal entities, both of which questions would most certainly be governed by Delaware law.  Rather, the point is that, even if Series B could maintain suit in its own name, the judgment in this case will preclude any subsequent litigation in Maine by Series B arising out of the same facts.  That point should have been made clear by my citation of Northeast Harbor Golf Club, Inc. v. Town of Mount Desert, which is a Law Court case in which "the only issue" was whether a party that was not party to a prior action was nevertheless bound by the judgment in that prior action.  618 A.2d 225, 227 (Me. 1992).

## Conclusion

For the reasons set forth above, the defendant's motion to amend judgment (Docket No. 73) is DENIED, except to the extent this memorandum of decision serves to clarify the prior findings of fact and conclusions of law.

***So Ordered.***

June 11, 2007                                          /s/ Margaret J. Kravchuk
                                                               U.S. Magistrate Judge